UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,                              Case No. 15-20134

v.                                                                    Honorable Nancy G. Edmunds

MATTHEW LEON VAUGHN,

    Defendant-Petitioner,
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE [31]**

**I.    BACKGROUND**

In March 2013, the FBI began investigating a workspace for distributing child pornography on the website box.com. A cooperating defendant provided access to the workspace to FBI agents in Alaska, which led to the identification of Defendant-Petitioner Matthew Leon Vaughn as one of the users of the box.com workspace. In May 2014, FBI agents in Detroit executed a search warrant on Petitioner's Ypsilanti apartment where agents seized multiple electronic devices, cell phones, laptop computers, CD-ROMs, and removable hard drives. Given the significant amount of electronic media seized, the FBI released Petitioner pending review of the evidence. Petitioner then moved to Toledo where he continued to collect and download child pornography using peer-to-peer software.

The FBI arrested Petitioner on February 26, 2015 based on a criminal Complaint filed on February 23, 2015. (Dkt. # 1; Dkt. # 9). On March 10, 2015, a grand jury indicted Petitioner, charging him with Receipt of Child Pornography and Possession of

Child Pornography. (Dkt. # 10). On October 1, 2015, Petitioner was charged with three additional counts in a First Superseding Indictment: Distribution of Child Pornography, Production of Child Pornography, and Commission of a Felony Offense Involving a Minor by a Registered Sex Offender. (Dkt. # 17). On April 18, 2016, Petitioner pleaded guilty to one count of Production of Child Pornography in violation of 18 U.S.C. § 2251(a), and one count of Commission of a Felony Offense Involving a Minor by a Registered Sex Offender in violation of 18 U.S.C. § 2260A pursuant to a Rule 11 Plea Agreement. (Dkt. # 25). The Court sentenced Petitioner to be imprisoned for a term of 420 months, the mandatory minimum sentence required for the crimes Petitioner pleaded guilty to. (Dkt. # 30; Dkt. # 25). Petitioner did not file an appeal in this matter.

On May 17, 2017, Petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 arguing that Defense Counsel was ineffective. (Dkt. # 31). The Government filed a response on July 10, 2017. (Dkt. # 38). Petitioner filed a reply on August 1, 2017. (Dkt. # 41). Subsequently, the Court granted Petitioner's motion requesting transcript materials, provided him courtesy copies of several transcripts, and granted his request for additional time to supplement his motion. Petitioner then filed a supplemental brief on November 27, 2017. (Dkt. # 42). For the reasons set forth below, the Court now DENIES Petitioner's motion to vacate, set aside, or correct his sentence.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." To prevail on a Section 2255

motion, the petitioner must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (internal quotations omitted). Section 2255 motions filed *pro se* are liberally construed. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

To prevail on an ineffective assistance claim, Petitioner must show that his counsel's performance was both deficient and prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* In other words, Petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. "This standard is highly deferential, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Mallett*, 334 F.3d at 497 (quoting *id.* at 689). To prevail on the second, or prejudice, prong of the *Strickland* standard, a petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. When a defendant alleges that ineffective assistance of counsel led to the acceptance of a plea agreement, the defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

3

### III.    ANALYSIS

#### A.  Superseding Indictment and the Speedy Trial Act

Petitioner first argues that Defense Counsel was ineffective because she failed to move to dismiss the Superseding Indictment as untimely, citing the Speedy Trial Act.[1] The Government responds that there was no Speedy Trial Act violation, and therefore no reason for Defense Counsel to file such a motion.  The Government notes that the approximately 30,000 images and 3,000 videos of child pornography seized from Petitioner's Ypsilanti apartment took a significant amount of time for the FBI to review.  That evidence led to the filing of the Superseding Indictment on October 1, 2015, approximately six and a half months after the original Indictment.  Petitioner further argues that Defense Counsel was ineffective because she failed to move to dismiss the case based on trial not commencing in a timely fashion and agreed to continuances.  The Government counters that the seventy-day time limit under the Speedy Trial Act was not exceeded because of the continuances granted by the Court and that these continuances benefited Petitioner.

According to the Speedy Trial Act, an indictment or information must be filed within thirty days from the date of arrest or service of a summons.  18 U.S.C. § 3161(b).  Additionally, absent a guilty plea, the defendant's trial must commence within seventy

---

[1] Petitioner also questions the validity of the Superseding Indictment because it contains no signature by the magistrate judge. (Dkt. #41, Pg ID 252).  However, it is the grand jury who decides to proceed with an indictment, not the magistrate judge. Fed. R. Crim. P. 6(f).  Both the grand jury foreperson and an attorney for the government must sign the indictment. Fed. R. Crim. P. 6(c), 7(c)(1).  In this case, both the original Indictment and the Superseding Indictment have the required signatures.  See Dkt. # 10, Pg ID 19; Dkt. # 17, Pg ID 47.

4

days from the filing of the indictment or information.  *Id.* at § 3161(c)(1).  The Speedy Trial Act's time limitations are meant to "limit the possibilities that long delay will impair the ability of an accused to defend himself."  *Dickey v. Florida*, 398 U.S. 30, 54 (1970) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)).  In making these calculations, certain periods of time are excluded including delays associated with "other proceedings concerning the defendant" and continuances granted by the judge based on "the ends of justice served by taking such action outweigh[ing] the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  When considering whether to grant a continuance, courts consider "the reasonable time necessary for effective preparation" by the government and defense counsel, amongst other factors.  *See id.* at § 3161(h)(7)(B)(iv).  If the time limitations imposed by the Speedy Trial Act are not met, the charges and indictment shall be dismissed.  *Id.* at § 3162(a).

The government need not file an indictment within thirty days of arrest for all crimes it has proof of.  The Speedy Trial Act "do[es] not require that every offense chargeable from a criminal episode be dismissed for failing to comply with the thirty-day time limit for indictments following an arrest.  Rather, [it] only requires the dismissal of the offense charged in the complaint . . . ."  *United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990).  In *Nabors*, the only offense charged in the criminal complaint was attempted murder.  *Id.* at 1353.  Nabors was indicted on the thirty-third day after his arrest for multiple offenses including attempted murder, felon in possession of a firearm, and possession of cocaine.  *Id.*  Because the second indictment was filed after the thirty-day time limit, the district court dismissed the attempted murder count only.  *Id.* at

5

1355. Despite Nabors arguing that the court should dismiss the entire indictment, the court did not dismiss any other count, and the Sixth Circuit affirmed. *Id.*

In the current case, the Government filed a criminal Complaint charging Petitioner with the receipt and possession of child pornography on February 23, 2015. (Dkt. # 1, Pg ID 1-7). Petitioner was arrested and made his initial appearance before the Court on February 26. (Dkt. # 9, Pg ID 16). Twelve days later, on March 10, 2015, the grand jury indicted Petitioner, charging him with the same crimes contained in the Complaint. (Dkt. # 10, Pg ID 17-20). Therefore, Petitioner was indicted within thirty days of his arrest and within the Speedy Trial Act time limit. Likewise, the Superseding Indictment was not filed in violation of the Speedy Trial Act. Regardless of what evidence the Government had in its possession during the thirty-day period following Petitioner's arrest, the Government is not required to file a superseding indictment by a certain time under the Speedy Trial Act. *See Nabors*, 901 F.2d at 1355. Therefore, Petitioner is incorrect when he claims that "an indictment must be issued within 30 days of the time in which the evidence [] needed to issue the indictment was in the government[']s possession."[2] (Dkt. # 31, Pg ID 171).

---

[2] Petitioner cites *United States v. Van Brandy*, 563 F. Supp. 438 (S.D. Cal. 1983), to support this argument. The *Van Brandy* court acknowledged that in most cases a superseding indictment may be filed at any time. *See id.* at 441. In *Van Brandy*, the superseding indictment was filed less than a week before trial based on the defendants carrying firearms at the time of the crime. *Id.* at 438-39. In contrast, in the current case, the scheduled trial date was over a month away at the time of the Superseding Indictment. (Dkt. # 16, Pg ID 40). Furthermore, unlike in *Van Brandy*, at the time of the original Indictment, the Government still needed to perform extensive analysis of the computer media seized from Petitioner's apartment before charging Petitioner with the counts added in the Superseding Indictment.

Additionally, based on the continuances this Court granted, the Speedy Trial Act's seventy-day time limit between indictment and the commencement of trial was not violated in the current case. The filing of a superseding indictment adding new charges has no effect on the Speedy Trial clock for existing charges. *Sylvester v. United States*, 868 F.3d 503, 508 (6th Cir. 2017). Therefore, the Speedy Trial clock is still calculated from the date of Petitioner's original Indictment, March 10, 2015. From that date, fifty-five days elapsed before the Court granted the first continuance, which specified the period of May 4, 2015 to July 6, 2015 to be deemed "excludable delay under the provisions of the Speedy Trial Act." (Dkt. # 14, Pg ID 28). The excludable-delay period was extended to end on April 18, 2016 based on a series of continuances granted by the Court. (Dkt. # 15-16, 20-23). Because April 18, 2016 was the day Petitioner pleaded guilty, the Speedy Trial clock only ran for fifty-five days in total, which falls short of the seventy-day time limit.[3]

Petitioner has not shown that Defense Counsel's performance was deficient or prejudicial based on her agreeing to these continuances. *See Strickland*, 466 U.S. at 687. Unlike in *Dickey*, there is evidence that delaying the trial date in this case actually benefited Petitioner. *Cf. Dickey*, 398 U.S. at 54. As previously mentioned, there was a large amount of evidence Defense Counsel needed to review. The evidence "span[ned]

---

[3] Petitioner points to *United States v. Stewart*, 839 F. Supp. 2d 914 (E.D. Mich. 2012), as an illustration of the seventy-day time limit under the Speedy Trial Act expiring because continuances did not stop the clock. (Dkt. # 41, Pg ID 252). However, the continuances in *Stewart* did stop the Speedy Trial clock. It was the defendant's motion to suppress evidence that did not stop the clock. *See Stewart*, 839 F. Supp. 2d at 919. This decision was later overturned by the Sixth Circuit in *United States v. Stewart*, 729 F.3d 517 (6th Cir. 2013), based on the Supreme Court overruling the Sixth Circuit's interpretation of whether a pre-trial motion by a defendant stops the Speedy Trial clock in *United States v. Tinklenberg*, 563 U.S. 647 (2011). *Stewart*, 729 F.3d at 523-24.

7

three different jurisdictions over the course of several months." (Dkt. # 15, Pg ID 32). Given the sensitive nature of the materials, the parties also had to coordinate to allow Defense Counsel to review the evidence at a "secure law enforcement facility." *Id.* The Court granted this continuance to provide Defense Counsel with a reasonable amount of time to review the evidence in order to prepare for a possible trial. *See id.* at Pg ID 31; 18 U.S.C. § 3161(h)(7)(B)(iv). Additionally, the continuances gave Defense Counsel more time to negotiate a universal plea deal. (Dkt. # 23, Pg ID 70-71). The eventual Plea Agreement benefited Petitioner by resolving the current case as well as additional charges the U.S. Attorney's Office in the Northern District of Ohio was contemplating filing (based on examination of evidence from Petitioner's other apartment in Toledo). *See id.*; Dkt. # 25, Pg ID 85.

Therefore, based on the deferential standard articulated in *Mallett* and *Strickland*, Petitioner has not shown that Defense Counsel's performance was deficient regarding filing a motion to dismiss the Superseding Indictment as untimely or regarding agreeing to the continuances. Additionally, even if disagreeing to a continuance was in the Petitioner's best interest, Defense Counsel's agreement was not required for the Court to grant a continuance. *See* 18 U.S.C. § 3161(h)(7)(A). The Court concludes that Petitioner was not prejudiced by Defense Counsel agreeing to the continuances.

**B. Plea Agreement and Plea Hearing**

Petitioner also argues that Defense Counsel was ineffective because she failed to object to a difference between the sentence he asserts he agreed to in his Plea Agreement and the sentence that was ultimately presented to the Court. The Government counters that by signing the Plea Agreement submitted to the Court,

8

Petitioner agreed to be bound by it. Petitioner further argues that during his plea hearing the Government committed prosecutorial misconduct by making him admit to an offense that was not included in his Superseding Indictment and that Defense Counsel should have objected.

Per *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980)), plea agreements follow the standards of contract law. In *Baker*, the Sixth Circuit stated that "[t]o allow [a] defendant to attempt to prove by affidavit that the [plea] agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards." *Id.* Additionally, criminal defendants are bound by their responses given under oath that their guilty pleas were freely entered into. *United States v. Brown*, 96 F. App'x 380, 383 (6th Cir. 2004) (citing *id.*).

Petitioner argues that the plea deal he agreed to with the Government was for a sentence not to exceed ten years. However, the signed Rule 11 Plea Agreement, dated April 18, 2016, specified a guideline range of 420-485 months. (Dkt. # 25). By signing this agreement, Petitioner acknowledged that he read the entire document, understood it, and agreed to its terms. *Id.* at Pg ID 88. Petitioner pleaded guilty to one count of Production of Child Pornography in violation of 18 U.S.C. § 2251(a), and one count of Commission of a Felony Offense Involving a Minor by a Registered Sex Offender in violation of 18 U.S.C. § 2260A. The production conviction carried a mandatory minimum sentence of 25 years of imprisonment due to Petitioner's prior child pornography conviction. *See* Dkt. # 25, Pg ID 79, 82. Additionally, the 2260A conviction carried a mandatory, consecutive sentence of ten years of imprisonment.

9

*See id.* at Pg ID 82, 91. Therefore, Petitioner's mandatory minimum sentence was 35 years (or 420 months) of imprisonment, which is the sentence that Petitioner agreed to and that the Court imposed. *See id.* at Pg ID 80, 97-98; Dkt. # 30. The Court concludes that Petitioner has not shown that Defense Counsel's performance was deficient in failing to object to any difference between the sentence Petitioner agreed to and the sentence imposed.

Petitioner next claims prosecutorial misconduct based on the Government trying to have him "admit to offenses that [were] not [included] into the indictment" at his plea hearing on April 18, 2016. (Dkt. # 42, Pg ID 262, 264; Dkt. # 39, Pg ID 229). He also argues that Defense Counsel was ineffective because she failed to object to the Government's alleged misconduct. Petitioner points to the following line of questioning during the plea hearing.

> THE COURT: Please tell me in your own words what it is that you did that makes you believe you're guilty. First with respect to Count 4, the production.
>
> THE DEFENDANT: On April 14th, I -- I'm sorry. On April 13th, I -- 2014, I took pictures with my phone of my niece, and at that time she was three years old.
>
> THE COURT: And were those pictures sexually explicit?
>
> THE DEFENDANT: Yes, they were.
>
> THE COURT: And you intended that you would take sexually explicit pictures; it wasn't by accident?
>
> THE DEFENDANT: No, ma'am, it was not by accident.
>
> THE COURT: Let me go through the elements. And did you encourage her to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct?
>
> MS. STUDNICKI: Your Honor, I believe it mentions in here that she was asleep, so I don't know, when you say encouraged...

10

> THE COURT: You just arranged for the photographs to be sexually explicit without her knowledge?
>
> MR. MULCAHY: Your Honor, may I have one moment with Ms. Studnicki?
>
> THE COURT: You may.
>
> (Brief pause.)
>
> THE DEFENDANT: I just had her pose naked.
>
> THE COURT: Okay. And you knew that the visual depiction would be transmitted in interstate commerce, that was your intent?
>
> THE DEFENDANT: Umm...
>
> THE COURT: Or that you had used some instrument of interstate commerce. You used a cell phone, right?
>
> THE DEFENDANT: I used an instrument, yes, ma'am.
>
> THE COURT: And you knew that was an instrument of interstate commerce?
>
> THE DEFENDANT: Yes, ma'am.

(Dkt. # 39, Pg ID 228-30).

In his affidavit, Petitioner asserts that the Government committed prosecutorial misconduct by cross-examining him pertaining to other crimes not admitted to during the brief pause. (Dkt. # 42, Pg ID 264). He claims that the prosecutor read an element of Count Four to him: That the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Petitioner then told him that he did not commit any of those acts. The prosecutor then stated that he forgot the minor victim was asleep and told Petitioner to say that he "had her pose naked." According to Petitioner's affidavit, Petitioner then asked Defense Counsel, "How can I have her pose naked if she is asleep?" Defense Counsel responded, "Does it matter? Right now you could be facing even more time."

11

After reviewing the record, the Court concludes that it contains no indication of prosecutorial misconduct or error on Defense Counsel's part, even accepting Petitioner's affidavit as true. There is also no indication that Petitioner was pressured to admit to any offense that was not charged in the Superseding Indictment. Regarding the Production of Child Pornography Count, Petitioner admitted at the plea hearing and in the signed Plea Agreement that he employed and/or used the sleeping minor victim to take sexually explicit pictures on his phone, and that he intended to take sexually explicit pictures of her. That Petitioner did not "encourage" the minor victim to engage in sexually explicit conduct because she was asleep makes no difference.

Additionally, Petitioner is bound by his statement given under oath that his guilty plea was freely entered into. In *Brown*, the defendant argued that her guilty plea was coerced because the government suggested it might seek a superseding indictment if she did not agree to the plea deal. *Brown*, 96 F. App'x at 382-83. The Sixth Circuit denied the defendant's claim of prosecutorial misconduct because she "acknowledged under oath that her guilty plea was not the result of any threats, coercion or inducement made by the government." *Id*. Similarly, in the current case, Petitioner argues that he was pressured by the Government and Defense Counsel to tell the Court that he "just had her pose naked" based on the prospect of facing a longer sentence. (Dkt. # 39, Pg ID 229). In his affidavit, Petitioner says he repeatedly told the Government and Defense Counsel that he did not "knowingly employ, use or persuade, entice [or] coerce a minor to engage in sexually explicit conduct." *See* Dkt. # 42, Pg ID 264. However, Petitioner told the Court that no one tried to force him to plead guilty by any mistreatment, or pressure, or threats of any kind, and that he was pleading guilty voluntarily and freely.

12

(Dkt. # 39, Pg ID 229). Petitioner also admitted to the Court, before the brief pause, that he took sexually explicit pictures on his phone of the sleeping minor victim and that he intended to do so.

The Court concludes that there was no error in the Government's conduct, and that Petitioner was not prejudiced by any failure to raise an objection on Defense Counsel's part. *See Strickland*, 466 U.S. at 694.

### C. Notice of Appeal

Petitioner argues that Defense Counsel was ineffective because she told him to "say no" when the Court asks him if he will be appealing his sentence, despite the alleged problems with the Superseding Indictment and Plea Agreement discussed above. (Dkt. # 31, Pg ID 164). The Government counters that, by signing the Plea Agreement, Petitioner waived his right to appeal his sentence. The Government also argues that Petitioner failed to specifically instruct Defense Counsel to file an appeal.

"A waiver of appeal rights may be challenged on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel." *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009). A defendant in a criminal case may waive "any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (internal quotation marks and citation omitted) (allowing the defendant to waive his constitutional right to an appeal). However, even if a defendant has waived his right to appeal through a plea agreement, he is entitled to have his attorney file an appeal if he explicitly requests one. *See Campbell v. United*

13

*States*, 686 F.3d 353, 359-60 (6th Cir. 2012). The Supreme Court has said that the first question to ask when evaluating whether counsel's representation was deficient under the *Strickland* standard when counsel chooses not to file an appeal is whether "counsel in fact consulted with the defendant about an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Counsel who consults with the defendant "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

In the current case, Petitioner waived his right to appeal by signing the Plea Agreement. As previously mentioned, based on his statements under oath, Petitioner freely entered into this agreement. (Dkt. # 39, Pg ID 229). One of the agreement's terms was that Petitioner would not appeal his conviction if his sentence did not exceed 420 months. (Dkt. # 25, Pg ID 86). Because the Court ultimately sentenced Petitioner to 420 months, this term of the plea agreement remained valid. Because of this restriction, the Court told Petitioner after sentencing that the Court did not believe Petitioner had the right to appeal his sentence. However, the Court nevertheless informed Petitioner that he had fourteen days to do so. (Dkt. # 40, Pg ID 249).

Petitioner's affidavit about his conversation with Defense Counsel before sentencing indicates that he was consulted about an appeal and did not explicitly request Defense Counsel to file one. *See* Dkt. # 31, Pg ID 164; Dkt. # 41, Pg ID 254. In *Roe*, the Court defined consult as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe*, 528 U.S. at 478. According to Petitioner's affidavit, Defense Counsel advised Petitioner to tell the Court that he would not be appealing his sentence

14

to avoid a longer sentence. (Dkt. # 31, Pg ID 164). Based on Petitioner already having signed the Plea Agreement and affirmed that he did so willingly before the Court, it was reasonable for Defense Counsel to advise Petitioner on how to follow through on the deal he had agreed to. According to Petitioner's affidavit, although he initially questioned Defense Counsel's reasoning, Petitioner agreed with her advice. *Id.* Petitioner has not claimed in any of his filings to date to have given Defense Counsel an express instruction to file an appeal. Therefore, the Court concludes that Petitioner has not met his burden of showing Defense Counsel's representation was constitutionally deficient in this regard.

### D. Remaining Undeveloped Issues

Petitioner asserts that his criminal Complaint and arrest warrant are invalid because of a change in his case identification number. This change in case number is consistent with the Court's normal procedure in criminal cases. The numbers before the dash in a case identification number indicate the last two digits of the year the case was filed. Therefore, "15-xxxxx" indicates a matter initiated in the year 2015. When a complaint is issued, the Court assigns a case identification number with a number three after the dash (xx-3xxxx). Consistent with this convention, Petitioner's case was assigned number 15-30092 upon the Government filing the Complaint on February 23, 2015. After an indictment is filed, the Court assigns a new case identification number with a number two after the dash (xx-2xxxx). Consistent with this convention, Petitioner's case was reassigned to the current case number, 15-20134, and the activity under the preexisting case number, 15-30092, was merged into the current case number. Lastly, the clerk simply misspoke when she initially called case identification

15

number 15-30047 at Petitioner's arraignment on March 12, 2015.  *See* Dkt. # 35, Pg ID 189; Dkt. # 42, Pg ID 260.  That identification number does not relate to a case against Petitioner, and the clerk immediately corrected the record.  *See id.*

Petitioner also argues that he received the maximum sentence despite the parties agreeing to a shorter sentence in the Plea Agreement.  Petitioner is mistaken.  Again, Petitioner signed a Rule 11 Plea Agreement which specified a guideline range of 420-485 months.  (Dkt. # 25).  The Plea Agreement stated that the production conviction carried a mandatory minimum sentence of 25 years of imprisonment due to Petitioner's prior child pornography conviction.  *See* Dkt. # 25, Pg ID 79, 82.  It further stated that the 2260A conviction carried a mandatory, consecutive sentence of ten years of imprisonment.  *See id.* at Pg ID 82, 91.  Therefore, Petitioner's mandatory minimum sentence was 35 years (or 420 months) of imprisonment, which is the sentence that Petitioner agreed to and that the Court imposed.  *See id.* at Pg ID 80, 97-98; Dkt. # 30.  Petitioner would have faced an even longer sentence had the Government not agreed to dismiss Counts 1, 2, and 3 as well as agreed not to prosecute Petitioner in the Norther District of Ohio pursuant to the Plea Agreement.  *See* Dkt. # 25, Pg ID 85.  The Court further notes that the production conviction carried with it a possible 50 years of imprisonment due to Petitioner's prior child pornography conviction.  *See* 18 U.S.C. § 2251(e).

Lastly, Petitioner argues that Defense Counsel was ineffective because she should have filed a motion to challenge a sentencing enhancement pursuant to U.S.S.G. § 2G2.2(c)(1).  However, Petitioner received the mandatory minimum sentence for the two counts he pleaded guilty to. Therefore, the Government correctly

16

notes that any dispute about the guidelines is inconsequential. Petitioner was not prejudiced by any failure on Defense Counsel's part to challenge any sentencing enhancement in this case.

## IV.     CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 and 2255 Proceedings requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citations omitted).

For the reasons stated in this opinion, the Court will deny Defendant a certificate of appealability because he has failed to make a substantial showing that his constitutional rights were compromised.

## V. CONCLUSION

Based upon the foregoing, IT IS ORDERED that the petition for post-conviction relief is DENIED WITH PREJUDICE. IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 25, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager